UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFFREY WILLIS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 4:06-CV-758 CAS |
| v. ) | |
| ) | |
| GLOBAL POWER GLOBAL WEALTH ) | |
| ENTERPRISES, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on plaintiffs' second renewed motion for default judgment against defendants Global Power Global Wealth Enterprises, LLC; Global Wealth Investments, LLC; Global Wealth Investment Group, LLC; Opportunity Lives, LLC; and Andre E. Mitchell (the "GPGW defendants"). Plaintiffs' motion is accompanied by affidavits and exhibits. On November 29, 2007, the Court held a hearing on plaintiffs' motion for default judgment. Following the hearing, plaintiffs filed additional evidence in support of the motion. See Docs. 88 and 89. For the following reasons, the Court will grant plaintiffs default judgment in the amount of $1,671,678.40.

**I.     Background**

Plaintiffs Jeffrey Willis, Russell McCray, Antoine McNeal, Darryn Myers, Brian Willis, Cesar Sandan, and Shantrece Buchanan filed this action alleging defendants violated the Securities Exchange Act of 1934, 15 U.S.C. § 78a, et seq., the Missouri Securities Act of 2003, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. Plaintiffs also alleged causes of action for fraudulent misrepresentation and civil conspiracy. The Complaint alleges the GPGW defendants sold unregistered securities to plaintiffs totaling $540,000.00.

The GPGW defendants never entered an appearance and never responded to plaintiffs' complaint.[1] On June 12, 2006, the Clerk of Court entered a default against the GPGW defendants pursuant to Federal Rule of Civil Procedure 55(a). See Doc. 16.

## II. Default Judgment Standard

The entry of a default judgment should be a "rare judicial act." Comiskey v. JFTJ Corp., 989 F.2d 1007, 1009 (8th Cir. 1993). Prior to the entry of a discretionary default judgment, the Court must satisfy itself that the moving party is entitled to judgment, including by reviewing the sufficiency of the complaint, and the underlying substantive merits of his claim. 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 55.20[2][b] (3d ed. 2007); Aldabe v. Aldabe, 616 F.2d 1089, 1092-93 (9th Cir. 1980).

An entry of default from the Clerk of the Court pursuant to Fed. R. Civ. P. 55(a) is a prerequisite to the grant of a default judgment under Rule 55(b). Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 783 (8th Cir. 1998). "A default judgment by the court binds the party facing the default as having admitted all of the well pleaded allegations in the plaintiff's complaint." Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc., 370 F.3d 715, 722 (8th Cir. 2004) (citing Taylor v. City of Ballwin, 859 F.2d 1330, 1333 n.7 (8th Cir. 1988)). Where default has been entered, the "allegations of the complaint, except as to the amount of damages are taken as true." Brown v. Kenron Aluminum & Glass Corp., 477 F.2d 526, 531 (8th Cir. 1973). If the damages claim is indefinite or uncertain, the amount of damages must be proved in a supplemental hearing or

---

[1] On August 7, 2006, the Court received a letter sent by defendant Andre Mitchell addressed to plaintiffs' counsel, Jay Kanzler. [Doc. 34] The letter denied wrongdoing, and informed counsel of defendant's address. The Court has sent all subsequent orders to defendant's listed address, but all mail has been returned as undeliverable since October 10, 2006. Defendant Mitchell has never entered an appearance or filed an answer to the complaint.

proceeding to a reasonable degree of certainty. Everyday Learning Corp. v. Larson, 242 F.3d 815, 818-19 (8th Cir. 2001).

**III. Discussion**

    **A. Factual and Procedural Background**

As stated above, the record shows that the GPGW defendants were served with summons and complaint, but have failed to enter any appearance or file a responsive pleading in this matter. Prior to the entry of a discretionary default judgment, this Court must satisfy itself that the moving party is entitled to judgment, including by reviewing the sufficiency of the complaint and the underlying substantive merits of the claim. 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 55.20[2][b] (3d ed. 2007).

The well-pleaded allegations of plaintiffs' complaint establish that in January 2005, the GPGW defendants advertised investment opportunities and solicited investments in a Private Placement Memorandum ("January PPM"). They later issued a VIP Private Placement Memorandum ("VIP PPM"), and in March 2005 issued another Private Placement Memorandum ("March PPM"). These PPMs solicited investments in the form of promissory notes guaranteed by the company.

The January PPM stated the GPGW defendants were a "full-service financial services and business consulting firm," and were "expanding its private investment firm, GWIZ Investments, for the purposes of creating, developing, evaluating and managing income and investment opportunities with primary emphasis on real estate and small business ventures . . . ." The January PPM stated the defendants intended to raise $1,000,000 in debt financing by offering high yield senior unsecured notes. Pursuant to the January PPM, each investor was required to purchase the notes and execute a subscription agreement. The January PPM set forth the value of the notes, maturity dates, and total

anticipated return on the notes. Those individual investing $25,000 or more were directed to obtain a copy of the "high end or VIP Investor Offering."

The VIP PPM also solicited investments in the form of promissory notes guaranteed by the company. This PPM promised investors a 600% return within 12 months of their investment. In addition to quarterly investment return payments, VIP investors were promised annual dividends based on the investor's percentage of equity. The VIP PPM stated that, based upon projected earnings for Fiscal Year 1, an investor of $250,000 would receive a projected dividend of nearly $270,000.

The March PPM offered a "Rapid Response Private Investment Offering" to use in "expanding the operations of Opportunity Lives and in purchasing Options or completing Position Purchased for real estate properties."

The affidavits and documents submitted by plaintiffs show they purchased notes in the following amounts:

| | |
|---|---|
| Jeffrey Willis | $200,000 |
| Russell McCray | $90,000 |
| Antoine McNeal | $64,000 |
| Darryn Meyers | $100,000 |
| Brian Willis | $36,000 |
| Cesar Sandan | $25,000 |
| Shantrece Buchanan | $25,000 |

Defendants did not register the promissory notes with the Securities Exchange Commission ("SEC"). Defendants made no payments to plaintiffs, either of principal, interest, dividend or the promised rate of return on their investment.

On May 26, 2005, the Missouri Secretary of State, Securities Division, filed a Petition for Order to Cease and Desist against the GPGW defendants, alleging illegal activity under the Missouri

Securities Act of 2003. An Order to Cease and Desist was entered on May 31, 2005. After an administrative hearing and proceedings, the Securities Division entered an order against the GPGW defendants, finding them in violation of Missouri law, including unlawfully selling or offering to sell securities identical to those sold to plaintiffs and for making material misrepresentations or omissions to investors, identical to those made to plaintiffs.

Based on the well-pleaded allegations of plaintiffs' complaint, the Court finds plaintiffs have sufficiently alleged claims of securities violations pursuant to the Securities Exchange Acts of 1933 and 1934, the Missouri Securities Act of 2003, fraudulent misrepresentation, and civil conspiracy. The GPGW defendants have failed to answer or otherwise plead. Therefore, the Court will grant plaintiffs' motion for default judgment.

**B.     Damages**

1.     Principal Amount Invested by Plaintiffs

Plaintiffs seek damages in the amount of $540,000.00 for a return of the principal amount invested by plaintiffs. In support of the motion for default judgment, each plaintiff submitted an affidavit and other documents establishing the principal amount of investment. See Doc. 18, Exs. 1-5; Doc. 87, Ex. 1; Compl., Ex. D1-D5.

Under Missouri securities law, a plaintiff may recover the consideration paid for the security, less that amount of any income received on the security. See Mo. Rev. Stat. § 409.5-509. The Court finds plaintiffs have proven their damages regarding return of the principal amount of their investments to a reasonable degree of certainty, and are entitled to these damages. The Court will award plaintiffs damages in the amount of $540,000.00.

2. <u>Annual Interest of 8.0%</u>

Plaintiffs request prejudgment interest in their complaint. An "award of prejudgment interest, in the absence of statutory directives, rests in the discretion of the district court." <u>Cargill, Inc. v. Taylor Towing Serv., Inc.</u>, 642 F.2d 239, 241 (8th Cir. 1981). In their motion for default judgment, plaintiffs request prejudgment interest at a rate of nine percent per annum from May 1, 2005 through August 30, 2007. Missouri securities law provides the statutory basis for the award of prejudgment interest, however, and allows for interest at the rate of *eight* percent per year from the date of purchase. <u>See</u> Mo. Rev. Stat. § 409.5-509.

Plaintiffs' motion seeks interest starting from May 1, 2005. The Court will award plaintiffs prejudgment interest calculated at eight percent per year from the date of purchase as prescribed by § 409.5-509. Calculated at this rate, plaintiffs' interest on the $540,000 principal investment from May 1, 2005 to March 1, 2008 is $131,678.44.

3. <u>Attorneys' Fees and Costs</u>

Missouri law also allows plaintiffs to collect costs and reasonable attorneys' fees determined by the court. <u>See</u> Mo. Rev. Stat. § 409.5-509. Plaintiffs' motion for default judgment seeks an award of $180,000 in attorneys fees. Plaintiffs' counsel submitted no detailed billing statements, affidavits of counsel, or any other evidence in support of this amount. At the hearing on this matter, counsel indicated this fee was based on a contingency fee agreement entered with plaintiffs. Because the Court did not have enough information based on counsel's comments to find the request for attorneys' fees reasonable, the Court asked plaintiffs' counsel to submit the contingency agreement to the Court. <u>See</u> Tr. at 11. After the hearing, the Court issued an order requiring plaintiff to submit

additional evidence in support of the request for attorneys' fees and costs within fifteen days. See Doc. 83.

Plaintiffs' counsel never submitted any contingency fee agreement. On January 9, 2008, as additional evidence of the fee award, plaintiffs' counsel submitted a memorandum stating as follows:

> Counsel for Plaintiffs represents that the firm of Witzel & Kanzler, LLP spent in excess of 250 hours on this matter. The rates for attorney's fees range from $150.00 per hour to $200.00 per hour. As such, Plaintiffs' counsel calculates their attorney's fees, using the above hourly rates and hours spend, as $43,750.00. Plaintiffs request that this court consider the novelty and difficulty of the issues presented in this case and the results obtained for Plaintiffs to increase the amount of attorneys' fees by a factor of 1.5 or greater. Plaintiffs spent $3,978.62 in costs for service fees, deposition transcripts, copies, postage, and the filing fee.

See Doc. 88, Pl. Mem at 3 (internal citations omitted).

Even if the Court were to find that plaintiffs presented sufficient evidence to support an award of attorneys' fees and costs based on counsel's memorandum, the fees and costs total only $47,728.62. Even increasing the attorneys' fees by a factor of 1.5 as counsel requests, the total comes to only $69,603.62. Plaintiffs' motion seeks an award of $180,000.00. The award sought is 158 percent greater than the greatest amount counsel set out in their memorandum in support of the fee award.

Plaintiffs' counsel has not submitted any evidence, e.g., billing statements, contingency agreements, receipts, invoices, affidavits of counsel, etc., to support an award of attorneys' fees. The Court has no information regarding the billing rates of any particular attorney working on the case, and no information regarding the amount of time spent on the case by any particular attorney. The most the Court has is an unsworn memorandum of counsel estimating the amount of time spent on the case firmwide, and a range of hourly rates generally charged by the firm. Moreover, the Court

7

has no itemization of any costs. The Court has carefully reviewed the memorandum submitted by counsel. The Court concludes that it does not have enough information to make any finding that the request for attorneys' fees and costs is reasonable, and therefore denies counsel's request for attorneys' fees and costs.

### 4. Punitive Damages

Plaintiffs seek a punitive damages award of $1,000,000. At the hearing on this matter, when asked to support their claim for punitive damages, counsel stated that the request was a "rounded off doubling of the principal." Counsel stated that defendants' actions were outrageous and the major perpetrators of this fraud, Andre Mitchell and Henry Allen, had been indicted for their activities. Counsel also pointed to the action of the Missouri Secretary of State's Office in filing its Petition for Order to Cease and Desist against the GPGW defendants. Counsel subsequently filed the Amended Cease and Desist Order. See Doc. 88, Ex. 1. On February 22, 2008, plaintiffs' filed a copy of the plea agreement entered into by the government and defendant Andre Mitchell. See Doc. 89, Ex. 1.

Plaintiffs have cited no statute allowing recovery of punitive damages, but state that under Missouri law "punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." See McGuire v. Tarmac Environmental Co., Inc., 293 F.3d 437, 441 (8th Cir. 2002). Presumably, plaintiffs seek punitive damages based on their state law claims for fraudulent misrepresentation and civil conspiracy. See Grogan v. Garner, 806 F.2d 829, 838 (8th Cir. 1986) (finding case law "clearly allows for recovery of punitive damages in pendent state claims"). In Missouri, "[p]unitive damages 'are imposed for the purpose of punishment and deterrence.'" Parsons v. First Investors Corp., 122 F.3d 525, 530 (8th Cir. 1997) (quoting Rodriguez v. Suzuki Motor Corp., 936 S.W.2d 104, 110 (Mo. 1996)). Several

factors may be considered by the Court, including the degree of malice or outrageousness of defendants' conduct, aggravating and mitigating circumstances, defendants' financial status, the character of both parties, the injury suffered, the defendants' standing or intelligence, and the relationship between the parties. Id.

As the Eighth Circuit has noted, "[w]e may take judicial notice of judicial opinions and public records[.]" Stutzka v. McCarville, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (citing United States v. Eagleboy, 200 F.3d 1137, 1140 (8th Cir. 1999)) (taking judicial notice of an unpublished order of default judgment in the bankruptcy court). In support of their motion for default judgment, plaintiffs filed the plea agreement entered between the government and defendant Andre Mitchell on February 14, 2008. See Doc. 89, Ex. 1. Defendant pleaded guilty to one count of mail fraud and one count of money laundering arising out of the sale of securities. As part of the plea agreement, defendant Mitchell admitted that the GPGW defendants published documents that included numerous false and fraudulent representations; that he knew the representations in the documents to be false and fraudulent; that he conspired to falsely advise investors that the GPGW entities had acquired a variety of properties in the St. Louis area; that the total actual loss to investors was between $2,500,000 and $7,00,000; and that he abused a position of private trust.

In addition, plaintiffs have filed the Missouri Secretary of State's First Amended Cease and Desist Order dated October 12, 2005. See Doc. 88, Ex. 1. The Commissioner of Securities found defendants had offered the securities to their friends and family members: "[E]veryone was either a relative or friend of one of our directors, staff or executives and contacted through our warm market resources via telephone or e-mail." Id. at 8. According to the complaint, plaintiffs were "unsophisticated in, and lacking knowledge of business matters and the handling and investing of

9

money and, in particular, were unsophisticated in, and lacked knowledge of, matters relating to investing in speculative promissory notes." Compl. at 20. The allegations in the complaint also establish that defendants knew plaintiffs lacked the experience and "financial acumen" to enable them to make informed judgment decisions about the purchase and sale of securities. Id. at 21.

Based on a careful review of the record, the Court finds that the evidence supports a punitive damage award in this case. The evidence establishes plaintiffs were unsophisticated, and defendants intentionally made false and misleading representations to take advantage of unsophisticated investors. See generally Parsons, 122 F.3d at 530 (finding evidence supporting the punitive damages award included that the misrepresentations targeted unsophisticated investors, that plaintiffs had limited education and investment experience, and that defendant intended to take advantage of unsophisticated investors). Additionally, the Court finds that given the nature of defendants' intentionally fraudulent conduct, a punitive damages award of $1,000,000, which represents slightly less than twice the amount of actual damages, evidences a reasonable relationship between actual and punitive damages. See id. (finding an 11:1 ratio of between actual and punitive damages was reasonable in similar circumstances).

## IV. Conclusion

Based on the foregoing, plaintiffs' motion for default judgment is granted in the amount of $1,671,678.40. This amount represents $540,000.00 for the amount of principal investment, $131,678.44 in prejudgment interest, and $1,000,000.00 in punitive damages.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Second Motion for Default Judgment as to Defendants Opportunity Lives, LLC; Global Wealth Investment Group, LLC; Global Wealth

Investments, LLC; Global Power Global Wealth Enterprises, LLC; and Andre E. Mitchell is **GRANTED**. [Doc. 77]

**IT IS FURTHER ORDERED** that plaintiffs are awarded damages for the principle amount of investment in the amount of Five Hundred Forty Thousand Dollars ($540,000.00), prejudgment interest in the amount of One Hundred Thirty-One Thousand, Six Hundred Seventy-Eight Dollars and Forty-Three Cents ($131,678.43), and punitive damages in the amount of One Million Dollars ($1,000,000.00).

An appropriate judgment will accompany this memorandum and order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this   3rd   day of March, 2008.